UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Lori A. H.,[1]

    Plaintiff,

v.

Frank Bisignano, Commissioner of
Social Security,

    Defendant.

Case No. 24-cv-2262 (JMB/JFD)

**REPORT AND RECOMMENDATION**

---

  Pursuant to 42 U.S.C. § 405(g), Plaintiff Lori A.H. seeks judicial review of a final decision by the Defendant Commissioner of Social Security, which denied Plaintiff's application for disability insurance benefits ("DIB"). Before the Court are Plaintiff's Memorandum of Law (Dkt. No. 9), Defendant's Brief (Dkt. No. 16), and Plaintiff's Reply Brief (Dkt. No. 17).

  Plaintiff argues that the final decision should be reversed for three reasons. Plaintiff argues that the administrative law judge ("ALJ") failed to resolve a conflict between the testimony of a vocational expert ("VE") and the *Dictionary of Occupational Titles* regarding Plaintiff's ability to reach overhead, that the ALJ erred in considering Plaintiff's ability to operate hand controls and ability to handle, and that the ALJ did not include

---

[1] The District of Minnesota has adopted a policy of using only the first name and last initial of nongovernmental parties in Social Security cases.

1

mental functioning limitations in the residual functional capacity ("RFC") assessment[2] without explaining why not. The Commissioner asks the Court to fully affirm the final decision. The Court finds that the Commissioner erred in all three respects claimed by Plaintiff. The Court therefore recommends that the final decision be reversed and the matter remanded for further administrative proceedings.

**I.      Background**

People with disabilities can qualify for financial support from the Social Security Administration ("SSA") through one or both of its assistance programs: the Disability Insurance program under Title II of the Social Security Act and the Supplemental Security Income ("SSI") program under Title XVI of the Act. *Smith v. Berryhill*, 587 U.S. 471, 475 (2019) (citing *Bowen v. Galbreath*, 485 U.S. 74, 75 (1988)). Only DIB are at issue in this case. DIB is a program that provides support to those who worked and had sufficient social security taxes withheld from their pay over their working life to qualify for coverage if they become disabled. *Id.*; 42 U.S.C. § 423(a) (guaranteeing benefits for insured disabled people).

Unlike many social-security actions for judicial review, Plaintiff does not raise issues that require a comprehensive overview or discussion of the medical evidence. Rather, she argues that the ALJ committed legal errors or reached conclusions that were internally inconsistent. Accordingly, the Court focuses this Background section on the administrative proceedings and the ALJ's written decision.

---

[2] RFC measures the most a claimant can do, despite her limitations. 20 C.F.R. § 404.1545(a)(1).

### A.     Plaintiff's DIB Application, Initial Review, and Reconsideration

In Plaintiff's DIB application, she alleged disability beginning on July 19, 2020. (*See* Soc. Sec. Admin. R. (hereinafter "R.") 207.)[3] Plaintiff's alleged impairments included carpal tunnel syndrome ("CTS"), migraines, high blood pressure, high cholesterol, a thyroid condition, Barrett's esophagus, depression, anxiety, angina, and chronic obstructive pulmonary disease ("COPD"). (*See* R. 207.) Plaintiff's DIB application was denied at both the initial and reconsideration stages of review (R. 60–81, 98, 104), and she requested an administrative hearing before an ALJ (R. 113).

### B.     The Administrative Hearing

The ALJ convened an administrative hearing on August 24, 2023, at which VE Marisia Hall testified. (R. 34, 54–58.) Ms. Hall classified Plaintiff's past work as a medical assistant under the *Dictionary of Occupational Titles* ("DOT"), 079.362-010, SVP: 6,[4] which is typically a light physical demand level, but was a heavy physical demand level as Plaintiff described her job. (R. 55.) Ms. Hall classified Plaintiff's past work as an office

---

[3] The Social Security administrative record is filed at Dkt. No. 6. The record is consecutively paginated on the lower right corner of each page, and the Court cites to those page numbers rather than the page numbers provided by the Court's CM/ECF system.

[4] The U.S. Department of Labor publishes the DOT to provide "standardized occupational information to support job placement activities." DOT, Introduction, 1991 WL 645964 (4th ed., rev., 1991). The nine-digit number is the occupational code number. DOT, Parts of the Occupational Definition, 1991 WL 645965 (4th ed., rev., 1991). The Specific Vocational Preparation ("SVP") component represents the "time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, app. C, 1991 WL 688702 (4th ed., rev., 1991).

manager under DOT 169.167-034, SVP: 7, which is typically a sedentary physical demand level, but was a heavy physical demand level as Plaintiff described it. (R. 55.)

The ALJ posed a series of hypothetical questions to Ms. Hall. First, the ALJ asked Ms. Hall to assume a person of Plaintiff's age, education, and past work, who was "limited to a full range of light [sic] or there would be additional restrictions of occasional operation of hand controls bilaterally, occasional pushing and pulling bilaterally, occasional reaching overhead bilaterally. Frequent handling bilaterally."[5] (R. 55.) Ms. Hall testified that Plaintiff could perform her past work in accordance with the DOT definitions, but not as Plaintiff had actually performed those jobs. (R. 56.) Ms. Hall confirmed that the jobs did not require more than occasional overhead reaching. (R. 56.) For the second hypothetical question, the ALJ added a 10-pound lifting restriction to the original question, and Ms. Hall testified the person could perform the office manager job. (R. 56.) For the third question, the ALJ added unscheduled breaks throughout the workday, and Ms. Hall testified that the person could be off-task no more than 10% of the time. (R. 57.)

Ms. Hall confirmed under oath that her testimony was consistent with the DOT. (R. 57.) With respect to the reaching and overhead-reaching restrictions, Ms. Hall explained that her testimony was based on her education, training, and experience, because the DOT descriptions do not distinguish between overhead reaching and other reaching. (R. 57.) Specifically, Ms. Hall acknowledged, Plaintiff's past jobs would ordinarily require

---

[5] The hypothetical individual also had climbing, postural, exposure, and other limitations that are not material to the issues on judicial review.

4

frequent reaching, but in the case of overhead reaching, Plaintiff was limited to reaching "occasional[ly] or left." (R. 57.)

### C. The ALJ's Written Decision and the Appeals Council's Denial of Review

On October 24, 2023, the ALJ issued a written decision, finding that Plaintiff was not disabled. (R. 14–29.) The ALJ followed the familiar five-step sequential analysis described in 20 C.F.R. § 404.1520 in making that determination.[6] At each step, the ALJ considered whether Plaintiff was disabled based on the criteria of that step. If she was not disabled, the ALJ proceeded to the next step. *See* 20 C.F.R. § 404.1520(a)(4).

The ALJ determined at the first step that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of July 19, 2020. (R. 19.) At the second step, the ALJ found Plaintiff had the following severe impairments: bilateral hip degenerative joint disease, degenerative disc disease of the cervical spine, COPD, migraine headaches, and bilateral CTS. (R. 19.)

Also at step two, the ALJ found that Plaintiff's depression and anxiety were not severe impairments because they did not cause more than minimal limitations in Plaintiff's ability to perform basic mental work activities. (R. 20.) In addition, the impairments "seemed situational without meeting the 12-month duration requirement as the records do

---

[6] The five steps are "(1) whether claimant is engaged in substantial gainful activity, (2) whether claimant has a severe impairment, (3) whether the impairment meets or equals the severity of a listed impairment, (4) whether claimant has the residual functional capacity to perform past relevant work activity, and (5) if claimant is unable to do past work, whether claimant can perform other work." *Delph v. Astrue*, 538 F.3d 940, 946 (8th Cir. 2008) (citing *Smith v. Shalala*, 987 F.2d 1371, 1373 (8th Cir. 1993)).

not reflect ongoing mental health care or frequent mental health complaints." (R. 20.) The ALJ noted normal mental status examination findings and clinical observations. (R. 20.)

The ALJ also considered, at step two, the four broad areas of mental functioning known as the "paragraph B" criteria. (R. 21–22.) These criteria are used to evaluate how mental disorders affect a claimant's functioning. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A.2.b. The paragraph B criteria are (1) "understand, remember, or apply information"; (2) "interact with others"; (3) "concentrate, persist, or maintain pace"; and (4) "adapt or manage oneself." *Id.*

The ALJ found that Plaintiff had mild limitations in all four categories. (R. 21.) With respect to the category of understanding, remembering, or applying information, the ALJ wrote that Plaintiff used reminders to take medications, could do basic chores and housekeeping, could drive and shop, could handle financial transactions, and could understand written and spoken instructions, but was occasionally limited by physical pain in cooking meals, camping, and gardening. (R. 21.) For the category of interacting with others, the ALJ noted that Plaintiff spent time with others and reported no problems getting along with others, and that her medical records lacked evidence of problems with social interactions, but that Plaintiff reported decreasing social activities due to pain. (R. 21.) For the category of concentration, persistence, and pace, the ALJ documented normal activities such as performing household chores, driving, shopping, and engaging in numerous hobbies, but stated that Plaintiff was not able to kayak and camp as she once had and that migraines affected her concentration. (R. 21.) Finally, for the category of adapting or managing oneself, the ALJ remarked that Plaintiff lived independently and managed her

6

own finances, that Plaintiff did not need specialized mental health care, and that Plaintiff's mental health symptoms appeared secondary to situational stressors, but also that Plaintiff said she internalized stress until she became mad or frustrated. (R. 21–22.)

Proceeding to step three of the sequential analysis, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I. (R. 19.) Relevant to the issues presented for judicial review, the ALJ found that Plaintiff's CTS did not meet or medically equal a listed impairment because there was no electromyography or nerve conduction study after her CTS release surgeries, and she attended few follow-up appointments. (R. 24.)

Between steps three and four, the ALJ assessed Plaintiff's RFC, which is a measure of "the most [Plaintiff] can still do despite [Plaintiff's] limitations." 20 C.F.R. § 404.1545(a)(1). As part of this assessment, the ALJ considered the following evidence. There was a gap in treatment of Plaintiff's severe impairments from March 24, 2020, until June 1, 2022. (R. 27.) Testing and imaging were positive for CTS in Plaintiff's right extremity in January 2020, but symptoms were resolved after a release surgery in August 2022. (R. 25–26.) Chiropractic adjustments were helpful in treating migraines and neck pain. (R. 26–27.) Plaintiff's migraines were also controlled with medication near the end of the relevant time period. (R. 27.) Strength in Plaintiff's bilateral upper extremities was normal. (R. 27.) Clinical examinations, imaging, and treatment indicated that Plaintiff's functioning allowed for "limited overhead reaching, occasional hand controls/push/pull and frequent handling limitations." (R. 28.) State agency medical consultants found

7

Plaintiff capable of "occasional overhead reaching bilaterally" and "frequent handling bilaterally."[7] (R. 28.)

Ultimately, the ALJ determined that Plaintiff had the RFC

> to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except occasional operation of hand controls bilaterally; occasional pushing and pulling bilaterally; occasional reaching overhead bilaterally; frequent handling bilaterally; able to climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds, occasional balance, stoop, kneel, crouch, and crawl; no exposure to unprotected heights or moving mechanical parts; no concentrated exposure to humidity and wetness, dust, odors, fumes and pulmonary irritants, extreme cold, or vibration.

(R. 24.)

Proceeding to step four in the sequential evaluation, the ALJ considered whether Plaintiff could perform her past relevant work and determined she could perform her past jobs as a medical assistant and an office manager. (R. 28.) The ALJ relied on the VE's testimony that Plaintiff's work as a medical assistant fell under "DOT 709.362-101, light per DOT but heavy as performed, SVP-6," and that Plaintiff's work as an office manager fell under "[DOT] 169.167-034, sedentary per DOT but heavy as performed, SVP-7." (R. 28.) Based on the conclusion that Plaintiff could perform her past relevant work, the ALJ deemed Plaintiff not disabled at the fourth step of the sequential analysis and did not proceed to step five. (R. 29.)

---

[7] The SSA defines "occasionally" as "occurring from very little up to one-third of the time." SSR 83-10, 1983 WL 31251, at *5 (S.S.A. 1983). "Frequently" is defined as "occurring from one-third to two-thirds of the time." *Id.* at *6.

8

The Appeals Council denied Plaintiff's request for review of the ALJ's decision. (R. 1.) That denial made the ALJ's decision the Commissioner's final decision for judicial review.

## II. Legal Standards

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision, 42 U.S.C. § 405(g), or whether the ALJ's decision resulted from an error of law, *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id.* (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or because the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence and one of those positions is that of the Commissioner, the Court must affirm the Commissioner. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

A claimant has the burden of proving disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability, the claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

### III. Discussion

#### A. The ALJ Failed to Resolve a Conflict Between Ms. Hall's Testimony and the DOT Regarding Overhead Reaching.

The ALJ limited Plaintiff to occasional reaching overhead bilaterally, which was consistent with Ms. Hall's testimony, but the DOT definitions of office manager and medical assistant require frequent reaching. The Commissioner does not dispute either the conflict or the ALJ's failure to address the conflict in the written decision. (Def.'s Br. at 6 ("The Commissioner does not dispute the apparent conflict. Nor does the Commissioner dispute that the ALJ should have addressed the apparent conflict in his decision and explained how it had been resolved."), Dkt. No. 16.) Rather, the Commissioner argues that it was sufficient for the ALJ and Ms. Hall to address and, purportedly, resolve the conflict during the hearing.

Social Security Ruling ("SSR") 00-4p clarifies how an ALJ may use hearing testimony from a VE such as Ms. Hall. SSR 00-4p, 2000 WL 1898704, at *1 (S.S.A. Dec. 4, 2000).[8] The ALJ must "rely primarily on the DOT . . . for information about the requirements of work in the national economy" but may also use evidence from a VE "to

---

[8] The SSA rescinded and replaced SSR 00-4p with SSR 24-3p on January 6, 2025. SSR 24-3p, 2024 WL 5256890, at *1 (S.S.A. Dec. 6, 2024). Because the ALJ's decision was issued before January 6, 2025, the Court applies SSR 00-4p. *See* SSR 24-3p, 2024 WL 5256890, at *2 n.1 ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.").

resolve complex vocational issues." *Id.* at *2. "When there is an apparent unresolved conflict between [VE] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on" the VE's testimony. *Id.* Part of the ALJ's duty is to "inquire, on the record, as to whether or not there is such consistency." *Id.* When there is a conflict, the ALJ must resolve it by determining if the VE's explanation "is reasonable and provides a basis for relying on" the VE's testimony rather than the DOT. *Id.* A reasonable explanation includes, for example: (1) when evidence from the VE includes information that is not included in the DOT, such as information from the VE's experience; or (2) when the VE is able to provide more specific information about a job than the DOT, such as how a particular job is performed in a specific setting. *Id.* at *2–3. The ALJ "will explain in the determination or decision how he or she resolved the conflict" between the VE evidence and the DOT. *Id.* at *4.

Turning first to the ALJ's written decision, the ALJ did not "explain in the determination or decision" how he resolved the conflict between Ms. Hall's testimony and the DOT. Indeed, the ALJ did not even identify the conflict in the written decision, much less determine if Ms. Hall provided a reasonable explanation for the conflict. The ALJ's references to Ms. Hall's testimony did not mention the reaching restriction or the conflicting testimony at all. (R. 28–29.)

Nor did the ALJ explain verbally at the hearing how he resolved the conflict. The Commissioner suggests that a discussion between the ALJ and the VE at the hearing sufficed, but the Court does not agree. The ALJ asked Ms. Hall, "And then with respect to the reaching and the overhead reaching, is that something that's set forth in the DOT? Or

11

how did you come to that conclusion?" (R. 57.) Ms. Hall replied, "That was based on my education and training and as well as my experience." The ALJ added, "All right. Is that because the reaching doesn't differentiate between overhead and regular reaching?" Ms. Hall agreed. The ALJ continued, "And these jobs, do they ordinarily require frequent reaching?" Ms. Hall replied yes. The ALJ concluded, "But in the case of overhead, it would be occasional or left. Is that right?"[9]; Ms. Hall said yes. The Court is satisfied from this exchange that the ALJ "inquire[d], on the record, as to whether or not" Ms. Hall's testimony was consistent with the DOT and that the ALJ "elicit[ed]" an explanation for the conflict. *See* SSR 00-4p, 2000 WL 1898704, at *2. However, the ALJ neither "resolve[d] the conflict by determining if the explanation" was reasonable nor "explain[ed] the resolution of the conflict." *See id.* at *2, 4. The ALJ was required by SSR 00-4p to "explain in the determination or decision" how the conflict was resolved, it was error for the ALJ not to do so, and the discussion between the ALJ and VE during the hearing did not render the error harmless.

When a VE's testimony is not consistent with the DOT, the ALJ must resolve the conflict before he can rely on the testimony in the disability determination. SSR 00-4p, 2000 WL 1898704, at *4. Here, the ALJ's failure to actually resolve the conflict, to explain the resolution, or to include the explanation and resolution in the written decision mean that the ALJ cannot rely on Ms. Hall's testimony. The Commissioner points out, and the

---

[9] It is possible that the ALJ said "less" rather than "left," which would make more sense in the context of the question but still would not lead to a conclusion that Plaintiff was limited only in her ability to reach overhead and had unlimited ability to reach in all other directions.

12

Court agrees, that a claimant has the burden of proving at step four that she cannot perform her past relevant work. *Lewis v. Barnhart*, 353 F.3d 642, 648 (8th Cir. 2003). Without Ms. Hall's testimony, however, the DOT definition is the default. *See* SSR 00-4p, 2000 WL 1898704, at *2. The DOT definitions for medical assistant and office manager require frequent reaching, which exceeds the occasional overhead-reaching limitation the ALJ determined was the maximum amount of overhead reaching that Plaintiff could do.

The Commissioner relies on *Twyford v. Comm'r Soc. Sec. Admin.*, 929 F.3d 512, 519 (8th Cir. 2019), for the proposition that an apparent conflict between a VE's evidence and the DOT "is adequately resolved by the vocational expert's testimony." (Def.'s Br. at 6.) *Twyford* is distinguishable from the case at hand because the *Twyford* court found that the VE's testimony in *Twyford* did not conflict with the DOT. 929 F.3d at 519 ("Because the ALJ described Twyford's limitations to the VE, the VE responded with possible jobs, and the VE's testimony did not conflict with the DOT, the ALJ was entitled to rely upon her testimony.") (cleaned up). Moreover, the ALJ's compliance with SSR 00-4p was not at issue in *Twyford*.

In conclusion, the Court recommends that the Commissioner's final decision be reversed and the matter be remanded to the SSA because the ALJ did not identify, address, resolve, or explain the resolution of the conflict between the VE's testimony and the DOT regarding overhead reaching.

> **B.      The ALJ Erred in His Consideration of Plaintiff's Ability to Handle and Ability to Operate Hand Controls.**

Plaintiff argues that the ALJ's finding that Plaintiff could only occasionally operate hand controls bilaterally is "confusing" and "internally inconsistent" with the finding that Plaintiff could frequently handle bilaterally. (Pl.'s Br. at 7.) Plaintiff surmises that since handling and operating hand controls involve the same body parts and movements, the limitations on those abilities should be the same. The Commissioner responds that the "limitation to *frequent* handling bilaterally was a *general* limitation on all such types of working with her hands; whereas, her limitation to only *occasional* operation of hand controls bilaterally was a *stricter* limitation on only one specific type of working with her hands—operating hand controls . . . ." (Def.'s Br. at 10) (emphases added).

The SSA defines "handling" as "[s]eizing, holding, grasping, turning, or otherwise working with the hand or hands. Fingers are involved only to the extent that they are an extension of the hand." SSA Program Operations Manual, DI 25001.001 Medical and Vocational Quick Reference Guide. "Hand controls are a set of controls in a machine that allow a person to operate it with their hands such as handles or levers in a vehicle that allow a person to operate the gas and brake pedals." *Michael L. v. Kijakazi*, No. 2:20-CV-08310-SP, 2022 WL 911583, at *6 (C.D. Cal. Mar. 29, 2022) (citations omitted), *aff'd sub nom. Lertchitvikul v. Kijakazi*, No. 22-55536, 2023 WL 5624265 (9th Cir. Aug. 31, 2023). The Court finds, based on these definitions, that the operation of hand controls falls under the definition of handling.

14

Granted, some courts have found that the ability to handle is different from the ability to operate hand controls. *Froehlich v. Comm'r of Soc. Sec.*, No. 17-1179-M, 2018 WL 3354998, at *5 (W.D. Okla. June 12, 2018); *Steven L. W. v. O'Malley*, No. CV 1:23-1837-SVH, 2024 WL 510925, at *11 (D.S.C. Feb. 8, 2024). In *Froehlich*, the court noted that "forms completed by state agency physicians and similar forms typically provided to examining physicians clearly indicate that manipulative activities such as reaching and handling are distinct from the ability to push, pull, and operate hand and foot controls." 2018 WL 3354998, at *5. In the case at hand, however, Plaintiff has identified no forms with similar language in the record, nor has the Court located any. In *Steven L. W.*, the court determined that handling was a different function than operating hand controls based on an RFC assessment by the state agency medical consultant, which contained disparate findings for operating hand controls and manipulative abilities such as handling. 2024 WL 510925, at *11. There is no comparable RFC assessment in the record in this case. Thus, there is no evidentiary basis in the administrative record of this case to conclude that the ability to handle is separate and distinct from the ability to operate hand controls.

Both the medical assistant job and the office manager job require *frequent* handling. DOT 079.362-010 (medical assistant), DOT 169.167-034 (office manager). Because operating hand controls falls under the category of handling, the ALJ's RFC limitation to *occasional* operation of hand controls is inconsistent with the DOT. There is no evidence in the record about whether the medical-assistant job or office-manager job would require the operation of hand controls more than occasionally. It is conceivable that one or both jobs could require frequent handling (broadly speaking) *and also* no more than occasional

15

operation of hand controls (more specifically). But the ALJ neither made such a finding nor identified evidence from the VE or elsewhere in the record to support such a finding. Therefore, the Court concludes that the ALJ's decision that Plaintiff could perform her past relevant work as a medical assistant and office manager is not supported by substantial evidence in the record as a whole. On remand, the ALJ should articulate and identify evidence regarding whether the jobs of medical assistant and office manager would require more than the occasional operation of hand controls.

> C. **The ALJ Erred by Not at Least Explaining Why Mental Limitations Were Omitted from Plaintiff's RFC.**

Plaintiff argues that the ALJ erred by not explaining why he did not include in the RFC the mild limitations in mental functioning the ALJ found at step two of the sequential evaluation. (Pl.'s Mem. at 8, 10 n.2.) The Commissioner responds that the mild limitations in the broad functional areas comprising the "paragraph B" criteria do not automatically equate to mental limitations that must be included in the RFC. (Def.'s Br. at 13.)

"[T]he limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4 (S.S.A, July 2, 1996). However, when an ALJ finds mild mental limitations at step two, "the ALJ should either incorporate these limitations into the RFC or provide justification for their omission." *Vicky R. v. Saul*, No. 19-CV-2530 (ADM/ECW), 2021 WL 536297, at *14 (D. Minn. Jan. 28, 2021), *R. &. R. adopted*, 2021 WL 533685 (D. Minn. Feb. 12, 2021); *see Debbie L. D. v. O'Malley*, No. 23-CV-649 (DLM), 2024 WL 1331989, at *4 (D. Minn.

16

Mar. 28, 2024). Here, the ALJ neither incorporated any mental limitations in the RFC nor explained why he omitted them.

The Commissioner's reliance on *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018), is misplaced. The plaintiff in *Chismarich* argued that the ALJ's findings of moderate limitations at step two were inconsistent with an RFC that included understanding and following simple instructions, responding appropriately to supervisors and coworkers, and working at a normal pace. *Id.* The issue in *Chismarich* was not that the ALJ failed to include any mental limitations in the RFC or explain their absence. To the extent *Chismarich* could be seen as analogous, it supports Plaintiff's position: the ALJ's findings of mild mental limitations at step two are inconsistent with a lack of mental limitations in the RFC, absent an explanation of why they were not included.

The ALJ's failure to justify the omission of any mental limitations is "reversible error because it bears on the hypothetical questions that the ALJ provided to the vocational expert." *Debbie L. D.*, 2024 WL 1331989, at *4; *see Vicky R. v. Saul*, 2021 WL 536297, at *14. "[T]he ALJ may well conclude that, based on Plaintiff's impairments, there was no need for any mental limitation in the RFC. But absent some analysis on that point, the Court would be left to review this matter by intuition rather than based on the record." *Debbie L. D.*, 2024 WL 1331989, at *4. Accordingly, the Court recommends that, on remand, the ALJ reassess Plaintiff's RFC and, if no mental limitations are included, explain why not.

Accordingly, based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. The relief requested in Plaintiff's Memorandum of Law (Dkt. No. 9) be **GRANTED**;

2. The relief requested in Defendant's Brief (Dkt. No. 16) be **DENIED**; and

3. The final decision of the Commissioner of the Social Security Administration be **REVERSED** and the matter **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendation.

Date: July 23, 2025

*s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).